UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Brenda Wilson, )<br>)<br>          Plaintiff, )<br>)<br>v. )<br>)<br>Hampton County, Tonda Smith )<br>Felsiha Mixson, Illya Odom, )<br>Diane Jamison individually as jail )<br>employees with the Hampton County )<br>Detention Center )<br>)<br>          Defendant[s]. )<br>_____) | C.A. No. 9:05-1777-PMD<br><br>**ORDER** |

      This matter is before the court on Defendants' Motion to Dismiss Plaintiff Brenda Wilson's ("Wilson") Complaint alleging causes of action pursuant to 42 U.S.C. § 1983 and the South Carolina Tort Claims Act. For the reasons set forth herein, Defendants' Motion to Dismiss is denied.

**BACKGROUND**

      Plaintiff Wilson was incarcerated at the Hampton County Detention Center ("HCDC") between November 4, 2002, and January 3, 2003. Wilson alleges that on or about December 16, 2004, Jermaine Orr ("Orr"), a corrections officer at HCDC, removed her from her cell and forced her to engage in sexual intercourse with him in the laundry room while threatening her with a can of mace. Wilson further alleges that this incident took place with the knowledge and acquiescence of two female correctional officers who were working at the time, Diane Jamison ("Jamison"), and Illya Odom ("Odom"). In fact, Wilson alleges that Defendants Jamison, Odom, chief jailer Felisha Mixson ("Mixson"), and jail administrator Tonda Smith ("Smith"), were on notice or had knowledge of prior incidents of a similar nature and failed to properly supervise and control Orr.

      On December 19, 2002, Wilson reported the sexual assault to a detention center nurse, and

she was later transported to a hospital where she informed the doctor of the rape. Wilson was released on January 3, 2003.

On June 21, 2005, Wilson filed her Complaint in the United States District Court for the State of South Carolina asserting causes of action against Hampton County under the South Carolina Tort Claims Act ("SCTCA") and against Defendants Mixson and Smith for civil rights violations pursuant to 42 U.S.C. § 1983. On October 11, 2005, Wilson amended her Complaint, in which she asserts the following causes of action: (1) against Hampton County under the SCTCA for gross negligence in the supervision of Wilson on December 16, 2002; (2) against Hampton County under the SCTCA for gross negligence in the discipline of Orr; (3) against supervisors Mixson and Smith, a Fourteenth Amendment violation under § 1983 for failure to discipline; and (4) against officers Jamison and Odom, a Fourteenth Amendment violation under § 1983 for failure to protect Wilson from the sexual assault of Orr. Defendants filed a Motion to Dismiss pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure, alleging that Wilson failed to exhaust her administrative remedies and that the statute of limitations bars her state law claims under the SCTCA.

## STANDARD OF REVIEW

**A.     Rule 12(b)(6) Motion to Dismiss**

A Rule 12(b)(6) motion should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claims that entitles him to relief. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir.1999). The complaint should not be dismissed unless it is certain that the plaintiff is not entitled to relief under any legal theory that plausibly could be suggested by the facts alleged. *See Mylan Labs. Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Further, "[u]nder the liberal rules of

federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to infer that all the required elements of the cause of action are present." *Wolman v. Tose*, 467 F.2d 29, 33 n. 5 (4th Cir. 1972).

**B.      Rule 56 Motion for Summary Judgment**

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

## ANALYSIS

### A.     Exhaustion of Administrative Remedies

In their Motion to Dismiss, Defendants allege that Wilson's Complaint must be dismissed because Wilson failed to exhaust her administrative remedies prior to coming to court. Defendants assert that the exhaustion requirement applies both to Plaintiff's claims under 42 U.S.C. § 1983 and to her state law claims under the SCTCA. The Court first will address exhaustion of remedies under § 1983 and then exhaustion under the SCTCA.

#### 1.     Wilson's Claims Pursuant to 42 U.S.C. § 1983

In 1996, Congress passed the Prison Litigation Reform Act ("PLRA") "[i]n response to an ever-growing number of prison-condition lawsuits that were threatening to overwhelm the capacity of the federal judiciary." *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 676 (4th Cir. 2005) (citations omitted). Pursuant to the PLRA, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, *by a prisoner confined in any jail, prison, or other correctional facility* until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). "Prisoner" is defined as: "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h).

There is no question that the PLRA's exhaustion requirement is mandatory. *See Booth v. Churner*, 532 U.S. 731 (2001) (holding that the PLRA requires a prisoner to exhaust administrative remedies regarding his excessive force claims, even if the prisoner seeks only money damages and such relief is not available under the administrative process); *Porter v. Nussle*, 534 U.S. 516 (2002) (holding that the PLRA's exhaustion requirement applies to all inmate's suits about prison life,

4

whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong). However, the question before the Court in this case is whether the PLRA's exhaustion-of-remedies requirement applies to an action filed by a *former* prisoner. The Court holds that it does not.

In *Grieg v. Goord*, the Second Circuit Court of Appeals squarely addressed this issue. 169 F.3d 165 (2d Cir. 1999). In *Grieg*, a parolee brought a § 1983 action against state prison officials, alleging violations of his constitutional rights while he was incarcerated. *Id*. The District Court dismissed the suit for failure to exhaust administrative remedies as required under the PLRA. On appeal, the Second Circuit Court of Appeals vacated the District Court's judgment and held that "litigants – like Greig – who file prison condition actions *after release from confinement are no longer 'prisoners' for purposes of § 1997e(a)* and, therefore, need not satisfy the exhaustion requirements of this provision." *Id.* at 167 (emphasis added); *see also Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005) ("[T]he exhaustion requirement does not apply to plaintiffs who file § 1983 claims after being released from incarceration."); *Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002) (adopting the view that "a prisoner who has been released is not precluded by the PLRA from filing a § 1983 suit for incidents concerning prison conditions which occurred prior to his release").[1]

In the case *sub judice*, Wilson brought suit after she was released, and therefore, she was no longer "a *prisoner confined* in any jail, prison, or other correctional facility." *See* 42 U.S.C. § 1997e(a) (emphasis added); *Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998) ("The statutory

---

[1] In *Ahmed*, the court noted that "every court of appeals to have considered the issue has held that the PLRA does not apply to actions filed by former prisoners." 297 F.3d at 210 n. 10 (citing *Harris v. Garner*, 216 F.3d 970 (11th Cir. 2000) (en banc), *cert. denied*, 532 U.S. 1065 (2001); *Page v. Torrey*, 201 F.3d 1136, 1139 (9th Cir. 2000); *Greig v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999); *Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998)).

language does not leave wiggle room; a convict out on parole is not 'a person incarcerated or detained in any facility . . . ."). Accordingly, and in light of both the statutory language and the relevant case law from other circuits, the Court holds that the exhaustion-of-remedies requirement in the PLRA does not apply to plaintiffs who file § 1983 actions after being released from prison.[2] Therefore, in the case *sub judice*, Wilson's § 1983 claims are not barred by any failure to exhaust administrative remedies.[3]

### 2.     Wilson's Claims Pursuant to the South Carolina Tort Claims Act[4]

In their Motion to Dismiss, not only do Defendants claim that Wilson's § 1983 claims must be dismissed for failure to exhaust, but also, Defendants claim that "[t]he exhaustion requirement extends to the Plaintiff's state law claims as well." (Mot. to Dismiss 2.) In support of this contention, Defendants cite the South Carolina Administrative Procedures Act, S.C. Code Ann. § 1-23-310, *et seq.*, and *Al-Shabazz v. State*, 338 S.C. 354, 527 S.E.2d 742 (2000).

---

[2] In *Kerr*, the Seventh Circuit Court of Appeals noted that "a distinction between current and former prisoners makes a modicum of sense; Congress deemed prisoners to be pestiferous litigants because they have so much free time on their hands and there are so few costs to filing suit. Opportunity costs of litigation rise following release, diminishing the need for special precautions against weak suits." 138 F.3d 323. Moreover, once a prisoner is released, he or she may no longer have access to certain administrative remedies, and thus, the Court believes it would be both futile and inconsistent with the spirit of the PLRA to require *former* prisoners to comply with the PLRA's exhaustion-of-remedies requirement.

[3] Because the Court holds that the exhaustion requirement does not apply to suits filed by former prisoners, the Court does not need to determine whether Wilson in fact exhausted all administrative remedies.

[4] The SCTCA provides: "The State, an agency, a political subdivision, and a governmental entity are liable for their torts in the same manner and to the same extent as a private individual under like circumstances, subject to the limitations upon liability and damages, and exemptions from liability and damages, contained herein." S.C. Code Ann. § 15-78-40. The SCTCA includes "counties" in the definition of a "political subdivision." S.C. Code Ann. § 15-78-30(h).

Pursuant to the South Carolina Administrative Procedures Act, "[a] party who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review . . . ." S.C. Code Ann. § 1-23-380(A). Notably however, the SCTCA does not include a similar provision requiring exhaustion of administrative remedies, and more importantly, the SCTCA provides that "[t]he handling and disposition of claims filed under this chapter are not subject to the provisions of Article 3, Chapter 23 of Title 1." S.C. Code Ann. § 15-78-80(f). In other words, claims filed pursuant to the SCTCA are not subject to the provisions of the South Carolina Administrative Procedures Act.

In *Al-Shabazz*, a prisoner filed a post-conviction relief application alleging that an Adjustment Committee and the South Carolina Department of Corrections had violated his constitutional rights to due process and equal protection. 338 S.C. at 361-62, 527 S.E.2d at 746. Ultimately, the Supreme Court of South Carolina granted *certiorari* to answer the following procedural question: "May petitioner raise claims regarding good-time credits and solitary confinement in a PCR action and, if not, how must he raise such claims in order to obtain review?" *Id*. at 362, 527 S.E.2d at 746. In answering this question, the court addressed "the procedure an *inmate* must use when seeking review of Department's decision in a non-collateral or administrative matter." *Id*. at 368, 527 S.E.2d at 749 (emphasis added). The court held that an inmate may seek judicial review of the Department's decisions under the South Carolina Administrative Procedures Act. *Id*. at 369, 527 S.E.2d at 750. "Placing review of these cases within the ambit of the APA will ensure that an *inmate* receives due process, which consists of notice, a hearing, and judicial review. It also will provide an orderly and consistent framework for resolving such matters." *Id*. (emphasis added). As previously outlined in this Order, Wilson was not a "prisoner" or an "inmate" at the time

of filing her suit.  Moreover, Wilson's claim under the SCTCA is not subject to the provisions of the South Carolina Administrative Procedures Act.  *See*  S.C. Code Ann. § 15-78-80(f). Accordingly, the court not only finds that the exhaustion requirement of the PLRA does not apply to Wilson's suit, but also that the exhaustion requirement in the South Carolina Administrative Procedures Act, as further outlined in *Al-Shabazz*, does not apply to her suit.  Therefore, Defendants' contention that Wilson's Complaint "must be dismissed because the Plaintiff failed to exhaust all administrative remedies" is without merit.

### B.      Statute of Limitations Under the South Carolina Tort Claims Act

Any action brought pursuant to the SCTCA "is forever barred unless an action is commenced within two years after the date of the loss was or should have been discovered . . . ." S.C. Code Ann. § 15-78-110.  However, the SCTCA also provides for a three-year statute of limitations if the plaintiff filed a verified claim pursuant to S.C. Code Ann. § 15-78-80.  To take advantage of the three-year statute of limitations, the verified claim "must be received within one year after the loss was or should have been discovered."  S.C. Code Ann. § 15-78-80(d).

In the case *sub judice*, Defendants assert that Wilson's state law claims are barred by the statute of limitations because the verified claim was not received until January 5, 2004, more than one year after the alleged injury, and Wilson filed her Complaint on June 21, 2005, more than two years after the alleged injury.  In contrast, Wilson contends that a complete copy of the verified claim was personally delivered to the Hampton County Administrator's Office on December 15, 2003, within one year of the alleged injury.[5]  (Pl. Opp. to Mot. to Dismiss 5.)  In support of her

---

[5] The date of occurrence of loss was December 16, 2002.  Therefore, if Wilson did file a verified claim on December 15, 2003, within one year of the alleged injury, then she can take

8

contention, Wilson references several documents, including but not limited to: (1) the affidavit of paralegal Shavone Middleton, in which Middleton asserts that she personally delivered a complete copy of the verified claim to the Hampton County Administrator's Assistant on December 15, 2003, who then handed the copy to Administrator Hartwig while in her presence; (2) a letter from Interim County Administrator Gordon Hartwig to Wilson's attorney, Jim Brown, in which Hartwig states that the petition of Wilson "dated December 15, 2003," was incomplete; and (3) the cover letter to the verified claim that Middleton hand-delivered to Hartwig on December 15, 2003, on which Middleton made a notation of her delivery. In light of the aforementioned, the Court cannot find as a matter of law that Wilson's state law claims are barred by the statute of limitations under the SCTCA.

## CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that Defendants' Motion to Dismiss is **DENIED**.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

Charleston, South Carolina
October 31, 2005

---

advantage of the three-year statute of limitations under the SCTCA.